This is a suit brought by complainant to recover from National Commercial Title and Mortgage Guaranty Company, funds that were assigned to the complainant, or said to be assigned, by the Church Construction Company. The facts have been elaborately stipulated as follows:
Church Construction Company was the owner of land on Harrison street, in the city of East Orange, New Jersey, upon which it was erecting apartment houses. One of such *Page 425 
apartment houses is known as number 150 Harrison street, East Orange, New Jersey.
On or before June 10th, 1927, Church Construction Company applied to National Commercial Title and Mortgage Guaranty Company for a loan of $250,000 to be secured by a mortgage upon the property above mentioned, upon which the proposed apartment house was then being erected.
On or about June 10th, 1927, National Commercial Title and Mortgage Guaranty Company accepted said application for the proposed loan and so advised Church Construction Company.
The mortgage given to secure payment of said mortgage loan was dated November 9th, 1927, and recorded November 17th, 1927, in the register's office of Essex county.
The agreement between the National Commercial Title and Mortgage Guaranty Company and Church Construction Company was that the mortgage loan was to be handled as the usual construction loan to the end that the proceeds of said loan should be advanced as the building progressed in construction.
Pursuant to this agreement there was advanced on account of said mortgage loan, prior to March 15th, 1928, the entire loan except $34,175.75.
Structural Gypsum Corporation sold and delivered to Church Construction Company gypsum partition blocks which were furnished for and actually used in the erection and construction of said apartment house building above referred to. These partition blocks were furnished between September 16th, 1927, and December 23d 1927. The last of said materials was furnished on December 23d 1927.
On March 15th, 1928, Church Construction Company was indebted to Structural Gypsum Corporation in the sum of $4,444.45, with interest from December 23d 1927, or a total of $4,505.91, for the agreed purchase price of said partition blocks.
On March 15th, 1928, Church Construction Company was also indebted to the complainant for materials furnished for use in the erection and construction of another apartment *Page 426 
house building, located at and known as number 160 Harrison street, East Orange, New Jersey, which apartment house building was then in course of construction and uncompleted. Said materials last referred to were furnished pursuant to a contract in writing between Church Construction Company and Structural Gypsum Corporation, bearing date August 11th, 1927, and a large quantity of materials was still to be furnished for said building under the provisions of said contract.
On March 12th, 1928, Church Construction Company was in default in payments due to complainant under said contract dated August 11th, 1927, and by letter addressed to Church Construction Company, bearing that date, complainant notified Church Construction Company that it was unwilling to proceed further under said contract and notified said Church Construction Company that said contract of August 11th, 1927, was rescinded. Said letter was as follows:
"March 12th, 1928.
Church Construction Company, Newark, N.J.
Gentlemen:
You have again defaulted in payment due as under our contract with you dated August 11th, 1927, In re Church Apartment house, 160 Harrison street, East Orange, New Jersey. As a matter of fact, and as your company must understand, you have not as yet paid us anything and have wholly failed to comply with your obligations under the contract.
Under the circumstances, we are unwilling to proceed further, and hereby notify you that said contract is rescinded and that we will hold your company liable for the contract price of the materials heretofore delivered and for all loss and damage which we have sustained.
 Yours very truly, STRUCTURAL GYPSUM CORPORATION. By "
On March 15th, 1928, Structural Gypsum Corporation was also pressing Church Construction Company for payment of said sum of $4,444.45, with interest, above referred to, which was due for partition blocks furnished for the building upon which the National Commercial Title and Mortgage Guaranty Company held its mortgage. Structural Gypsum Corporation *Page 427 
at that time was entitled to file a mechanics' lien upon said apartment house building and the lot upon which it was situated. Structural Gypsum Corporation was also pressing the Church Construction Company for payment of the amount then due it under its contract dated August 11th, 1927, for materials furnished for the apartment house building at 160 Harrison street, East Orange, New Jersey, and was refusing to proceed with said contract and was threatening to file a mechanics' lien upon said apartment house building.
On or shortly prior to March 15th, 1928, Church Construction Company agreed to give to Structural Gypsum Corporation an order for $4,500 upon the National Commercial Title and Mortgage Guaranty Company to be paid to the Structural Gypsum Corporation from the balance of the $250,000 mortgage loan above referred to, and on March 15th, 1928, Church Construction Company executed and delivered to National Commercial Title and Mortgage Guaranty Company an instrument in writing, a true copy whereof is as follows:
"March 15th, 1928.
 Title No. 390. CHURCH CONSTRUCTION CO. 150 Harrison Street, East Orange, N.J.
To The National Commercial Title and Mortgage Guaranty Company, 24 Commerce St., Newark, N.J.
Gentlemen:
I hereby authorize you (and this shall be your warrant and authority for so doing) to pay the sum of forty-five hundred dollars ($4,500), to Structural Gypsum Corporation, 53 Park Place, New York City, which said firm has furnished materials on my building at 150 Harrison street, East Orange, New Jersey. Said sum to be paid before final payment is made to Church Construction Co.
 CHURCH CONSTRUCTION CO., JULIUS CHURCH, President."
On March 21st, 1928, Whiting Moore, attorneys for Structural Gypsum Corporation, addressed to the National Commercial Title and Mortgage Guaranty Company the following letter: *Page 428 
"March 21st, 1928.
National Commercial Title and Mortgage Guaranty Company, 24 Commerce St., Newark, N.J.
Gentlemen: Re Title No. 390, Church Construction Co.
We represent Structural Gypsum Corporation, which company has furnished materials for the building of Church Construction Company at 160 Harrison street, East Orange.
We understand that the Church Construction Company has authorized you to pay to our client the sum of $4,500 from the final payment to be made on the mortgage which you hold on this property.
Will you be good enough to confirm this and also advise us whether there are ample funds in your hands to be paid on account of this mortgage to take care of this payment to Structural Gypsum Corporation.
Yours very truly, ICM/RCC WHITING MOORE."
On March 22d 1928, National Commercial Title and Mortgage Guaranty Company replied to said letter as follows:
"March 22d 1928.
Whiting Moore, Essex Building, Newark, N.J.
Gentlemen: In re Title No. 390.
Replying to your letter of March 21st, we beg to state that Mr. Church, President of The Church Construction Company, has given us an order in the amount of $4,500 payable to your clients, Structural Gypsum Corporation, which we have placed in our files.
While we do not guarantee the payment of these orders, still we shall always have this record before us and will co-operate with your clients in every way possible.
Yours very truly, THE NATIONAL COMMERCIAL TITLE G/MAC AND MORTGAGE GUARANTY COMPANY."
Title number 390 referred to by the foregoing letters, is the designation given by the National Commercial Title and Mortgage Guaranty Company to its $250,000 mortgage loan above referred to, and said letters refer to that loan.
In consideration of said document executed and delivered to National Commercial Title and Mortgage Guaranty Company by Church Construction Company, dated March 15th, 1928, a copy of which is above set forth, Structural Gypsum *Page 429 
Corporation refrained from filing a mechanics' lien upon said apartment house building and premises at 150 Harrison street, East Orange, New Jersey, and subsequently lost its right to such a lien, and refrained from suing Church Construction Company for payment of said sum of $4,444.45, with interest, and from pressing said Church Construction Company for payment of the same until after the said Church Construction Company was placed in the hands of a receiver by the New Jersey court of chancery, and until after it had lost its right to such a mechanics' lien.
In further consideration of said written instrument of March 15th, 1928, above referred to, in connection with other considerations, complainant reinstated said contract with Church Construction Company of August 11th, 1927, and proceeded to the fulfillment of the same.
Thereafter, National Commercial Title and Mortgage Guaranty Company advanced the balance of said $250,000 mortgage loan to Church Construction Company, upon the following dates, in the following amounts and for the following purposes, that is to say:
 Date Amount Payable to Endorsed to
Mar. 30, 1928 $6,000.00 Church Const. Co Bloomfield Eisenstadt
 (steam fitter) endorsed
 by them to supply house.
 " " " 2,000.00 " " " For payroll.
 " " " 1,500.00 " " " Bloomfield Eisenstadt
 (steam fitter) endorsed
 by them to supply house.
 " " " 5,000.00 " " " Henry R. Isenberg, for
 tile work.
 " " " 2,675.75 " " " Atlantic Elevator Co.
 " " " 2,000.00 " " " Charles Sonvak.
Apr. 16, " 2,000.00 " " " Charles Sonvak.
 " " " 5,000.00 " " " Federal Trust Co., to
 repay note for money
 previously borrowed by
 Church Const. Co.
 " " " 2,500.00 " " " Clark Co., for flooring.
 " 28, " 2,000.00 " " " Endorsed for deposit;
 used for payroll.
 " " " 2,000.00 " " " Charles Sonvak.
May 21, " 1,500.00 " " " Endorsed for deposit;
 __________ used for decorating and
 $34,175.75 painting.
 *Page 430 
In connection with the disbursement of $5,000 on April 16th, 1928, payable to Church Construction Company, endorsed to Federal Trust Company, the National Commercial Title and Mortgage Guaranty Company had on December 12th, 1927, addressed to Federal Trust Company a letter, a copy of which is as follows:
"December 12th, 1927.
Federal Trust Company, 24 Commerce St., Newark, N.J.
Gentlemen:
The National Commercial Title and Mortgage Guaranty Company will pay to you out of the second payment made on account of mortgage of the Church Construction Company, 164 Harrison street, East Orange, New Jersey, the sum of $5,000, being the amount this day loaned by you to the Church Construction Company for payroll.
 Very truly yours, FREDERICK R. PILCH, Vice President."
Church Construction Company hereby orders and directs The National Commercial Title and Mortgage Guaranty Company to pay to the Federal Trust Company the sum of five thousand ($5,000) dollars in the above matter.
Dated, December 12th, 1927.
 CHURCH CONSTRUCTION CO., INC., JULIUS CHURCH, Pres. SAUL CHURCH, Treas."
and to which there was added a direction in writing by Church Construction Company, a copy of which follows said letter as above set forth.
Two of the remaining items disbursed by National Commercial Title and Mortgage Guaranty Company, as shown by the above list of payments, were by checks each in the amount of $2,000, payable to Church Construction Company, bearing the notation "for payroll." The statement of Julius Church, president of Church Construction Company, is that the proceeds of each of said two checks were actually used for payroll, paying labor of mechanics employed for the completion of said building.
The remaining checks as listed above, all payable to Church Construction Company and bearing endorsements to Bloomfield *Page 431 Eisenstadt, to Henry R. Isenberg, to Atlantic Elevator Company, to Charles Sonvak and to Clark Company, and endorsed for deposit with the notation "used for decorating and painting," represent payments of money actually paid for work done toward the completion of said building subsequent to March 15th, 1928.
Upon the payment of the moneys above mentioned, the building was substantially completed but not fully completed, the final completion being effected by the receiver of Church Construction Company, appointed by the court of chancery of New Jersey.
The basis of this claim is the letter dated March 15th, 1928, and addressed to Church Construction Company, authorizing defendant to pay complainant $4,500. A copy is in the stipulation.
The first question is, whether this letter acted as an equitable assignment. An equitable assignment is made only where there is an order by a creditor, present or in futuro, to his debtor, to pay to a third person a sum of money fixed or capable of determination out of an existing fund or one that may be reasonably anticipated. This letter does not designate a fund out of which the moneys purported to be assigned are payable. SeeSeyfried et al. v. Stoll et al., 56 N.J. Eq. 187.
Vice-Chancellor Emery, in disposing of this case, made the following statement:
"But I have not been referred to any decision of our courts in which an equitable assignment has been held to have been made by an order, in which the order itself did not appear to designate and appropriate the fund in the owner's hands, or part of it. This is the effect of the order in Bernz v. Marcus Sayre Co.
(Court of Errors and Appeals), 7 Dick. Ch. Rep. 275, 281. InLanigan v. Bradley, c., Co., 5 Dick. Ch. Rep. 201, the equitable assignment was made out altogether by parol agreement to assign and acts thereunder. Where the assignment depends upon the construction of the order itself, a plain and sure test of construction is said to be whether the order or direction to the drawee, if assented to by him, would create an absolute indebtedness payable by *Page 432 
him at all events, or whether it would create an obligation only to make payment out of the particular designated fund. 3 Pom.Eq. Jur. 291 ¶ 1280, and cases cited. This test seems to me to be a sound one, and to be properly applicable to the present case. A simple acceptance of this order as drawn would, I think, clearly have bound Mrs. Seyfried to an absolute payment of the entire $1,000, and could not have been restricted or construed in her favor as obliging her to pay only out of a particular fund and to the extent only of this fund. The order did not designate or appropriate any fund out of which it was payable, and the statement that the debt was for material, c., cannot of itself extend further than being a statement of the consideration of the order. I hold, therefore, that the order did not operate as an equitable assignment, and that the claim of J. Gahagan's Sons, under this order, must be postponed to the claim of Dorsett and Gardner under their notices."
It should be noticed that the letter of March 15th was not absolutely accepted. The reply says:
"While we do not guarantee the payment of these orders, still we shall always have this record before us and will co-operate with your clients in every way possible."
The suggestion is that the reference, title number 390, on the letter and reply, constitutes a specific assignment of a particular fund existing or anticipated. In the decision of Vice-Chancellor Emery, above cited, he says: "* * * in which theorder itself did not appear to designate * * *."
I think these figures have little to do with it. If the defendant had accepted the authorization contained in the letter of March 15th it would have been obligated absolutely to pay. What, then, was the fund particularly designated? Was there any fund? By reference to the facts it will appear that the unpaid balance of the mortgage loan as of March 15th was applied to two purposes: First, discharge of a prior assignment to the Federal Trust Company, and, second, payment of the cost of labor and material actually used toward *Page 433 
the completion of the building. The result seems to be that the money, which it was anticipated that the Church Construction Company would eventually receive, never became payable to it but was applied to other proper purposes. Therefore, the fund, if any, out of which the $4,500 was assigned, never came into existence. Hence, there could have been no equitable assignment.
I will advise a decree dismissing the bill of complaint. It is unnecessary to consider the other points raised by counsel. *Page 434